AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District U.S. District Court for the Southern District of Florida | |
|---|---|---|
| Name<br>Robert Boltuch | Prisoner No.<br>199197 | Case No. |

Place of Confinement
Tomoka Correctional Institution
3950 Tiger Bay Road
Daytona Beach, FL 32124

| Name of Petitioner (include name under which convicted)<br>Robert Boltuch | Name of Respondent (authorized person having custody of petitioner)<br>JAMES MCDONOUGH, Secretary, Dept. of Corrections |
|---|---|

V.

The Attorney General of the State of: Florida, Charlie Crist

06-60407

CIV-COHN

FILED by DKIG
MAR 29 2006
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

**PETITION**

1.  Name and location of court which entered the judgment of conviction under attack

    Circuit Court for the Seventeenth Judicial District in and for Broward County, Florida

2.  Date of judgment of conviction  August 17, 2000

3.  Length of sentence  Count 1, life without parole; Count 2, 30 years. Sentences to run consecutively

4.  Nature of offense involved (all counts) _____

    Murder in the First Degree: F.S. 782.041(a)

    Attempted Murder in the First Degree: F.S. 782.04/777.04

5.  What was your plea? (Check one)
    (a) Not guilty        X
    (b) Guilty            ☐
    (c) Nolo contendere   ☐
    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6.  If you pleaded not guilty, what kind of trial did you have? (Check one)
    (a) Jury         X
    (b) Judge only   ☐

7.  Did you testify at the trial?
    Yes ☐   No X

8.  Did you appeal from the judgment of conviction?
    Yes X   No ☐

5.00
Receipt #536724

(2)

AO 241   (Rev. 5/85)

9. If you did appeal, answer the following:

   (a) Name of court   Fourth District Court of Appeal

   (b) Result   Judgment and Sentence affirmed.

   (c) Date of result and citation, if known   September 20, 2002

   (d) Grounds raised   See attached.

   (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

      (1) Name of court _____

      (2) Result _____

      (3) Date of result and citation, if known _____

      (4) Grounds raised _____

   (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

      (1) Name of court _____

      (2) Result _____

      (3) Date of result and citation, if known _____

      (4) Grounds raised _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
   Yes   x   No   ☐

11. If your answer to 10 was "yes," give the following information:

   (a) (1) Name of court   Circuit Court for the Seventeenth Judicial District in and for Broward County, Florida

      (2) Nature of proceeding   Rule 3.800 motion to correct illegal sentence.

      (3) Grounds raised   Unconstitutionality of life imprisonment imposed by the trial court

   C. Ground three: Testimony concerning racial animus by Mr. Boltuch was erroneously admitted, and entitles him to a new trial.

      Supporting FACTS (state *briefly* without citing cases or law): Prior to trial, the defense sought to suppress testimony concerning an alleged racist comment made by Mr. Boltuch, threatening to kill a black person the evening of Februrary 23, 1999. The defense argued that no proof was presented that the killing of Jody Bailey was race-based, rendering the admission into evidence of such testimony improper. Defense counsel's contemporaneous objection at the time this evidence was admitted at trial was overruled by the trial court. This was error.

   D. Ground four: See attached for additional grounds and corresponding supporting facts.

      Supporting FACTS (state *briefly* without citing cases or law):

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
    Yes ☐   No  X

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
    (a) At preliminary hearing  Alan H. Schreiber, Public Defender, Office of the Public Defender, Seventeenth Judicial Circuit, Broward County, 201 S.E. 6th St., North Wing, 3rd Floor, Fort Lauderdale, FL 33301

    (b) At arraignment and plea  Same as above.

(c) At trial  Evan Baron, Esq. and Hale Schantz, Esq. Baron and Schantz, P.A.

1565 North Park Drive, Suite 100, Weson, FL 33326

(d) At sentencing  same as above

(e) On appeal  Carey Haughwout, Public Defender, State of Florida. Office of the Public Defender Fifteenth

Judicial Circuit of Florida, 412 3rd St., West Palm Beach, FL 33410

(f) In any post-conviction proceeding  n/a

(g) On appeal from any adverse ruling in a post-conviction proceeding  n/a

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes   x    No   ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes   ☐    No   x
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes   ☐    No   ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

3/24/06
Date

_Robert Bothwel_
Signature of Petitioner

(7)

# ATTACHMENT TO §2254

### 9(d)- Ground Raised on Direct Appeal

1. GROUND ONE- THE ADMISSION OF IRRELEVANT COLLATERAL CRIMES EVIDENCE WAS ERROR, ENTITLING APPELLANT TO A NEW TRIAL

2. GROUND TWO- TESTIMONY CONCERNING FIREARMS AND AMMUNITION RECOVERED FROM APPELLANT'S RESIDENCE, BUT NOT CONNECTED TO THE CRIMES CHARGED BELOW, ENTITLES APPELLANT TO A NEW TRIAL.

3. GROUND THREE- TESTIMONY CONCERNING RACIAL ANIMUS BY APPELLANT WAS ERRONEOUSLY ADMITTED, AND ENTITLES HIM TO A NEW TRIAL.

4. GROUND FOUR- FAILURE TO GIVE A DEFENSE REQUESTED CIRCUMSTANTIAL EVIDENCE INSTRUCTION WAS ERROR, ENTITLING APPELLANT TO A NEW TRIAL.

5. GROUND FIVE- THE TRIAL COURT IMPROPERLY MADE FACTUAL FINDINGS CONCERNING THE TESTIMONY OF A STATE WITNESS, ENTITLING APPELLANT TO A NEW TRIAL.


**12(D)** - GROUND FOUR- Defense counsel failed to adequately investigate the facts concerning Mr. Boltuch's alibi defense.

Supporting facts:   Mr. Boltuch's alibi was that he could not have committed the crime charged because, although he had been out with people the night of the crime, before the crime was committed he had already returned home and soon after the crime had been committed (several miles away from the crime scene) he was home using the family computer, reading an e-mail that had been sent by a friend.

Therefore, to properly present the Mr. Boltuch's alibi to the jury it was incumbent upon defense counsel to produce disinterested, unbiased experts and irrefutable objective empirical

evidence to firmly establish three critical facts, to wit: one, the amount of time needed to drive from the crime scene to Mr. Boltuch's house; two, the amount of time needed to start the family computer and then to access Mr. Boltuch's e-mail account; and three, that only Mr. Boltuch had access to his e-mail. Defense counsel failed to do so and as a result deprived Mr. Boltuch of the ability to adequately present his alibi defense. The outcome of Mr. Boltuch's trial would likely have been different in the absence of said ineffectiveness.

**12(E)** - <u>GROUND FIVE</u>- Defense counsel failed to impeach the police concerning various blatant inconsistencies in their testimony.

<u>Supporting facts</u>: Officer Jonathan Smith testified at trial that, during his investigation, he and three other officers (Cucchi, Davis, and Goodbread) all showed up at Mr. Boltuch's house, knocked on his door, spoke with Mr. Boltuch, then searched his vehicle. The officers **then** discovered a shell casing in the front of Mr. Boltuch's house which was later matched to the murder weapon.

Officer Daniel Cucchi, however, contrary to Smith's trial testimony, stated in his deposition that discovery of the shell casing was made **before** going into the house. At trial, Cucchi testified that discovery of this casing was made **after** speaking with Mr. Boltuch and searching his vehicle.

Officer Clyde Davis testified next as to these events. However, his testimony was significant only in the fact that, after the sequence of events had become questionable, the prosecutor asked Davis the following leading question.

Q: Did there come a time when you observed a casing in the front . . . yard of [Mr. Boltuch's] residence?

Officer John Goodbread was the final officer present during this alleged discovery of the

shell casing at Mr. Boltuch's residence. His deposition was taken, however, Goodbread was never called by the State to testify at trial. That is likely because Goodbread's deposition testimony further confused the timeline as he stated that the shell casing was found **before** the officers even spoke with Mr. Boltuch. In fact, Goodbread stated the officers had only begun walking up the driveway when they discovered the casing.

**12(F)** - <u>GROUND SIX</u>- Defense counsel failed to impeach a State witness who said Mr. Boltuch made a racial statement before the crime.

<u>Supporting facts</u>: Sheila Overman-Martin, Jarred Lowe and Mr. Boltuch had patronized three bars the night of the crime. Two days after the crime, Overman-Martin told police that Mr. Boltuch had made an overtly racial statement **after** they left the second bar. However, at trial, Overman-Martin testified that Mr. Boltuch made the alleged statement **before** leaving for the second bar.

Alert counsel would have noticed this contradiction and would have attempted to impeach Overman-Martin. Counsel was ineffective for failing to do so. In the absence of counsel's failure, there is a reasonable probability that the outcome of the trial would have been different.

**12(G)** - <u>GROUND SEVEN</u>- Defense counsel failed to establish how Mr. Boltuch looked and what he was wearing the night of the crime.

<u>Supporting facts</u>: A witness described the offender as having "a well trimmed goatee." This witness also described the offender as having "little short stubbles" and as someone who "didn't shave today." However, a photograph taken only days after the shooting occurred showed Mr. Boltuch as having a thick and bushy goatee with long dark facial hair that was very

noticeable.

Defense counsel should have utilized this discrepancy to cross-examine the witness. In fact, counsel should have used this testimony to question **every** witness, including those individuals who spent time with the defendant on that very evening. Unfortunately counsel failed to do so and, as a result, deprived Mr. Boltuch of his constitutional right to effective assistance of counsel. In the absence of counsel's failure, there is a reasonable probability that the outcome of the trial would have been different.

**12(H)** - <u>GROUND EIGHT</u>- Defense counsel failed to object when the prosecutor attempted to shift the burden of proof to Mr. Boltuch.

<u>Supporting facts</u>: During closing arguments, the prosecutor made the following statement, which defense counsel failed to object to:

> "[Was] there any testimony about the drive because of what he had to drink? They're [sic] doesn't seem to be any testimony that he couldn't drive, that he couldn't operate a motor vehicle. Firing a weapon, was there any indication the he didn't know how to fire a weapon or drive home?"

This statement impermissibly shifted the burden of proof to Mr. Boltuch by implying that Mr. Boltuch had an obligation to call a witness to prove these things. Thus, it was reasonable for the jury to have inferred from the prosecutor's argument that Mr. Boltuch failed to prove his innocence because he did not produce a witness to testify that Mr. Boltuch, among other things, "didn't know how to fire a weapon." Defense counsel was clearly ineffective for failing to properly object to the burden shifting. There is a reasonable probability that, but for counsel's failure in this regard, the outcome of the trial would have been different.

**12(I) <u>GROUND NINE</u>** - Defense counsel's closing contradicted the trial evidence and linked

Mr. Boltuch to the murder weapon.

Supporting facts: During closing arguments, defense counsel made the following statement: "[w]e know [Mr. Boltuch] was out until at least 4:04 [a.m.], went home, put on email, **then got back in the car and fired a shot at Welleby**." Such an unimaginable admission by defense counsel, which had not been proven during trial, is outrageous. Expert testimony had already linked the bullet recovered from Welleby to the murder weapon; so defense counsel effectively put the murder weapon in Mr. Boltuch's possession only shortly before the alleged crime occurred. This closing argument which contradicts trial testimony is a prime example of inept lawyering constituting ineffective assistance of counsel.

**12(J)** - GROUND TEN- Defense counsel failed to adequately investigate the facts concerning Mr. Boltuch's voluntary intoxication defense.

Supporting facts: During closing arguments, defense counsel stated to the jury that they would be "instructed on what's called voluntary intoxication." However, counsel then spent a significant amount of time arguing to the jury that the defendant was probably **not** intoxicated the night of the crime. Additionally, defense Mr. Boltuch's intoxication the night of the crime and failed to address that defense during closing argument.

Also, during the penalty phase, defense counsel called an expert in forensic neuropsychology who testified that the amount of alcohol and drugs Mr. Boltuch consumed that night would have affected Mr. Boltuch's ability to appreciate the criminality of his actions and could have completely wiped out his memory. Interestingly enough, this expert was not called during the trial and thus the jury did not have this information with regard to Mr. Boltuch's voluntary intoxication defense.